134189 DeLawrence King v. Donald Morgan. Arguments not to exceed 15 minutes per side. Ms. Murphy for appellant. Thank you, Your Honor. And may it please the Court. Erin Murphy on behalf of Appellant DeLawrence King. And if I may, I'd like to reserve three minutes of rebuttal. Three? Thank you. You may. Under the Supreme Court's decision in Magwood v. Can you keep your voice up? Under the Supreme Court's decision in Magwood v. Patterson, the first application challenging a new judgment is not second or successive for purposes of AEDPA. Now, Magwood reserved the question presented here, which is whether that rule continues to hold true if the application challenges a new judgment that follows a resentencing proceeding, but raises challenges both to the new sentence and to the underlying conviction. But under a straightforward application of the judgment-based interpretation of AEDPA that Magwood adopted, the correct answer to that question is the answer that a majority of the Court of Appeals to consider it have reached, which is that the first petition challenging a new judgment is not second. Did I hear you say something like under a state-based interpretation? Was that the word you used? Judgment-based interpretation. You didn't say state. All right. I misheard. Yes. And that's the basic principle that Magwood establishes, which is that when you're determining whether an application is second or successive, you look at what judgment it is that the application is challenging, not the claims that the application is raising. And Magwood reached that conclusion for two reasons. One, because 2244 talks about a second or successive application, not a second or successive claim. And then also because 2244 and 2254 talk in terms of the judgment that's being challenged when they speak of an application. So the Court said what we need to ask is whether the application itself is second or successive, and we ask that by looking at what judgment it's challenging. Out of curiosity, so in this case, if you go back, let's say you have prior challenges to the conviction that are made again today, or you have challenges that could have been made, nothing's changed, but weren't, and now are made today. Is the abuse of the writ stuff just gone? Or is the abuse of the writ... I mean, let's say we buy your argument, the judgment-based approach. Is the district court judge allowed in now assessing this initial motion? It's not successive, so the district court assesses it. Is the district court allowed to apply abuse of the writ stuff, or is that only associated with the successive? I don't think abuse of the writ applies in this context. I take that to be what Magwood is saying. Abuse of the writ kicks in only if you have a second or successive application, but you have only if you have a new judgment. Now, plenty of other rules still apply. So the amazing thing about it, then, is AEDPA was this incredibly criminal-friendly statute. It's the first time I'd heard that. Only as to a criminal who obtains habeas relief or some sort of other relief... I can't hear you. Only as to what? Only as to a petitioner who has obtained relief through a habeas petition. Even if that relief is only technical or peripheral, or in this case, the relief was to be sentenced to more time in prison, right? That's right. And that's why this is a particularly odd case to say that he didn't really receive relief. But I think the point is the relief that is received is a new judgment. And because you receive a new judgment, you get a new habeas application. Is there any indication whatsoever that anybody thought about that? That is, the structure of AEDPA and so on, the fact that in many cases it does talk about claim, none of that would lead one to believe that your position would make any particular sense. Well, and, Your Honor, those are exactly the arguments that were raised in Magwood. And the Court said, we recognize that as to most questions, the statute speaks in terms of claims. But as to second or successive, it speaks in terms of judgments. Well, now, when you say it does so, let's look at that. Is there any place other than when it says, inquire into the detention of a person pursuant to a judgment of a court? That it speaks of judgments? Well, I think it's in... There's many places throughout 2244 and 2254 that the kind of terminology that's repeatedly used is someone who's in custody pursuant to the judgment of a state court. Well, or a court of the United States in 2254. Right, right. But he's, in one sense, he remains in custody continuously between the first judgment and the second judgment. It's not like the second judgment brought him into custody. That's right. But I actually think that kind of underscores the point here because if you look at what's going on in these cases, for instance, in this particular case, he wasn't in custody pursuant to the original judgment. Once his sentence was voided, the trial court entered an order that said, your original sentence and judgment is void. I am pursuant to this order, ordering you to remain in custody until such time as a new judgment is in place. But he wasn't in custody pursuant to that original judgment at that time. And now, the judgment pursuant to which he's in custody is the judgment that was entered upon his new sentencing. And I think that's precisely what was going on in the Burton case that the Supreme Court, where it considered the context of, you know, what is it that matters for purposes of a judgment? Is it the sentence or the conviction? And the Supreme Court said, you are in custody pursuant to one judgment, and that judgment is your judgment of both sentence and conviction. So, again, then the next phrase, whether if the illegality, you can't grant it, if the legality of such detention has been determined on a prior application. Of course, here there was an application before, but you would argue that it's not such detention, even though he's in the same prison in the same cell. That's right. Legality of that detention hasn't been determined. And Magwood specifically rejects the state there argued that what you should be looking at is the custody, not the judgment. The state said, look, he's in custody, and he's remained in custody, so if his custody has been upheld on that basis, then who cares if there's a new judgment? And the Supreme Court said, no, what we care about is the judgment. We don't want a custody. We don't read AEDPA as focusing on custody. We read it as focusing on the judgment pursuant to which you're in custody. But why do you think they did leave that open then in the sense that whether Magwood was right or wrong, the policy basis for that is somewhat stronger than what we have here. And I guess one of these is the Tenth Circuit case where it was strictly a technical correction, so that if Magwood was meant to be that all-encompassing, you wonder why did they leave it open back then. Well, and I would say two things to that. I mean, first off, as to the question of why Magwood left it open, I think they left it open for the simple reason that it wasn't presented there. I mean, the parties were arguing extensively about this question. The petitioner actually took the position that the petitioner agreed with the state and decided, oh, no, we don't want you to allow convictions in. I think because they recognized that that might make some justices nervous. But the court was thinking about it, and they ultimately decided that's not before us here, so we're not going to resolve it here. But I think it's also noteworthy what they said at the conclusion of the paragraph where they resolved the question, which was our conclusion here is based on the text of the statute, and our conclusion doesn't change based on consequences that the state speculates might flow from giving the statute a textual reading. What defenses are available to the state if you're right the second time around? So let's say the district court judge has addressed the exact claim. It's now brought again. Is that a stare decisis point? Is that a law of the case point? Or is it even a res judicata point? I think the right way to think about it would be as basically a stare decisis point or binding precedent if, say, it had been confirmed by the court above. It's a different judgment, so I don't think law of the case is the right principle. And notably, when the Supreme Court was talking about this in Magwood, what they said about why they weren't particularly concerned about the consequences of their decision, they didn't say because law of the case would apply. They said because it will be easy for courts to reject arguments that have already been rejected. It could have been brought that wasn't, but is now brought now, clearly would be barred by res judicata. You're going to say all that's there is procedural default type stuff. Procedural default, binding precedent, stare decisis, and the ability of courts to follow the precedent of parallel courts. There won't be stare decisis. Well, I guess they could have issued a ruling in some other case, but there won't be stare decisis from that case. It's one where he didn't raise it. If he didn't raise it, yes, that's going to be correct. Where it wasn't raised, I'm sorry, then it's going to be a procedural default and exhaustion questions. I should know this, but you're quite confident that whenever the court pre-ed put talks about abuse of the writ, they're talking about it in a jurisdictional sense as opposed to something that goes to the merits of why you lose? Well, what I'm quite confident about is that's the approach that the Supreme Court said it had taken in Magwood. They said, before this case, we are not aware of cases where they've said our pre-Magwood precedent has always treated a new judgment as allowing a new application and all of our abuse of the writ doctrine has only kicked in when you are bringing a second or successive application challenging the same judgment, not challenging a new judgment. I guess what I'm wondering is clearly EDPA has this jurisdictional component. You've got to get permission. Without it, there's no jurisdiction or authority. And to the extent the abuse of the writ had a merits component to it, why is it precluded? In other words, you could still be right about the judgment approach, but that doesn't tell you the answer to what to do when you review this conviction and you address an argument that could have been raised before but was not. Why isn't it within the range of possible for the district court to say, I'm applying the abuse of the writ doctrine here, not in the sense of, we don't have authority to look at them, but I'm just saying you lose. I guess because I don't think that there's kind of a freestanding abuse of the writ doctrine that applies even if your petition is not second or successive. The second or successive restriction in EDPA is what kicks in. EDPA makes something jurisdictional. It doesn't even use the word abuse of writ. It has a new phrase. So why isn't it within the range of possible to say, yeah, okay, it creates this new jurisdictional hurdle. It only applies to judgments. Fine. But we can still apply this as a merits-based doctrine and essentially punish you. I mean, abuse of the writ was basically like race judicata applies in some situations but not others. It was, but I mean, I think what the Court is saying in Magwin in several cases is we have to use EDPA now as our guide of what Congress has said are the appropriate circumstances in which to apply abuse of the writ. And in some respects, the Court has read EDPA as incorporating backdrop principles of abuse of the writ, but generally what the Court has always said is EDPA, we don't kind of get to do a completely judge-made version of this anymore because Congress put in place a statute and that statute tells us when abuse of the writ principles kick in. Now once they kick in, they may kick in in a way where we look to what courts have done under abuse of the writ to determine whether they apply, but they don't kick in unless EDPA says they do. And I read Magwin as saying they don't kick in unless you are challenging, unless you're not the first petition to challenge a new judgment. And I would just say, I mean, I think it's worth noting that Magwin clearly does allow claims that are claims that are based on the same factual predicate that could have existed before the resentencing. That was the question before the Court there. So clearly there's something they're allowing beyond just things that are new to the proceeding. That's true. They didn't say anything about abuse of the writ as to that. That's true. I mean, they said that's not abuse of the writ because they said it's not second or successive. So what are the I think you've already answered this, but I wasn't sure I understood what you said. What are the claims-based defenses that can be raised in this situation? In a case like this, certainly procedural default continues to apply. Exhaustion, the same exhaustion rules that are in ADPA continue to apply. If you don't have procedural default or an exhaustion problem, if you're bringing a claim that's already been brought before and rejected before, then you're going to have principles of a binding case, stare decisis, however you want to look at it. I think law of the case isn't quite the right doctrine in the 2254. What do you do about race judicata as applied to claims that could have been brought but weren't? So is that something that would be applicable or do you just say no, we don't apply that because it's inconsistent with the notion that it's a new judgment? It would not apply. Race judicata doesn't apply in the habeas context as a general rule, so it only applies to the extent that before ADPA to the extent that the courts had applied it, but post-ADPA to the extent that ADPA basically creates principles that are like race judicata and when you don't have a second or successive petition, you don't have race judicata under ADPA. But you could have collateral estoppel if the issue has been decided in a prior... I think issue preclusion would apply but not claim preclusion basically. So I think generally courts have taken the view that issue preclusion does apply in habeas proceedings basically the same way that applies in most other proceedings. I'm just trying to make sure, I don't know how much you thought about this but you know Part B of Justice Thomas's opinion, not a majority, so you have these three justices charting their own path. Part B by the way is all about the abuse of the writ point. But anyway, maybe not the point I was making, but that's... you can answer that question if you want. I'm really curious what you think the marks analysis is of what's going on here. In other words, the three are not engaging in that. How does this affect things if we're trying to figure out what the court's going to do next? I think when you read Justice Breyer's concurrence what the court is really... what the three are concerned about is Panetti. I mean, the debate that's going on, kind of sub silencio there I think is something here inconsistent with Panetti. And of course Justice Thomas dissented from Panetti. So, you know, I take the three to be concerned that if you applied a pure textual approach to every aspect of AEDPA, it's hard to understand how Panetti comes out the way it does. Justice Thomas of course in the majority opinion says we're not overruling Panetti, we're taking that as a given. And I think what the three are saying, what Justice Breyer's concurrence is saying, is as to what we mean in Magwood is abuse of the writ and second or successive doesn't kick in unless you are not the first judgment. But, abuse of the writ and second or successive doesn't necessarily kick in just because you aren't the first judgment. So there's the first application. They're saying, you know, this is the threshold before you ever get to abuse of the writ, but it doesn't mean that you're always going to be an abuse of the writ just because you're not the first application challenging in your judgment. Okay, anything else? Thank you, Counsel. You'll have your time for rebuttal. Good afternoon, Your Honors. My name is Scott Chris. I'm here on behalf of the Attorney General of Ohio representing the Warden. Magwood did, as the Court has already noted, leave the door open for precisely this situation and the District Court arrived at a perfectly acceptable solution given the space that the Supreme Court left for it. It is, rather than close the door, I think King would rather that the door not exist at all. That's what they're trying to read Magwood to say, but  again, as the panel can do this as to sentences, right? That's Magwood. I'm sorry? Rarely we can do this as to a new sentence. You can bring a claim that you could have brought before. You can even bring a claim you did bring before if there's a new judgment with a new sentence. That's Magwood. I agree. What do you do if the theory of invalidity with respect to the sentence is a theory that would apply equally to the conviction? You could imagine, say it turns out the judge is biased. There's juror misconduct. I mean, I really think there are probably quite a few things in the criminal arena where the problem would definitely apply to the sentence, but it would apply equally to the conviction. How does that work? Would that mean under your theory even though it's established it was a biased judge and the judge was involved in overseeing the trial and in sentencing that you could only challenge the sentence? Well, I think that's true. Doesn't that seem you're probably getting a little cognitive dissonance with that? Doesn't that seem strange? Well, I mean, you can come up with all sorts of hypotheticals where there's a cognitive dissonance. How about this one? It's a conviction with a jury that behaved improperly. The jury was paid. I mean, the jury was talking to one of the lawyers. I'm sorry? The jurors were talking to the lawyers during the case. In this case? No, it's a hypothetical. And you're saying all you can do is It seems awfully unlikely that that wouldn't have been raised in the first petition. Well, maybe they didn't discover it until later. Well, if then it's a Brady claim then it's that falls under one of 2244's exceptions if the predicate fact couldn't be discovered until later. So that's an exception to the secondary successive. All right, well, fine. It's just a stupid decision. You can't say that's never happened. Well, that's true. That's true. But Magwood, I mean, Magwood itself was a pretty easy decision. I mean, it's a pretty easy circumstance. Both claims were definitely related to the sentencing, related to the second sentencing. Whether the same error occurred at the first sentencing really doesn't matter. And really all the court was arguing about was whether or not you could reach back on a but I don't think that that is I'm not going to say that that's not a likely circumstance. It certainly could happen more than once. But here this is the case, this is the type of case where the Supreme Court specifically left the door open because and I don't disagree with King's assessment and Magwood's pronouncement that it's a judgment-based issue. But in Ohio in Fisher, the Supreme Court allowed that the judgment essentially can span back to the original conviction and include the amended judgment. Because in Fisher it announced that if you have a resentencing for the specific issue of post release control you cannot reach back to appeal things that have to do with the original conviction. So it would certainly be a strange circumstance if the second and successive rules permitted a collateral challenge in federal court that you could not receive on the same claims in state court. Didn't the Ohio court in this case say that the whole thing was a nullity? That they just said it's all void? It did in the original appeal of the resentencing in the 26B it acknowledged its mistake because Fisher came out in the interim. Fisher hadn't been issued yet when the first direct appeal of the resentencing occurred. And in fact in the 26B opinion the state court of appeals said that the original direct appeal should never have happened essentially because he was bringing claims having to do with the original conviction. And so in Ohio at least the crabbed definition of judgment that King would like to impose upon all judgments everywhere does not apply as cleanly as he would like. Isn't judgments in the federal statute, don't we have to give meaning to that across all the country? It's not going to vary from state to state is it? Well it certainly has to give some leeway to you've got to give deference, that's the whole point of AEDPA is to give deference to state law on an issue such as this where the state court has said that you cannot reach back to challenge the original conviction once you're resentenced on a discrete issue. I guess I'm struggling with why that binds us here. The state can do whatever it wants in post-conviction including eliminating it altogether, but I don't know why that is what the meaning of judgment is in a federal statute. I'm not sure how somebody could exhaust a claim if he's not permitted to bring it to the state court. Oh no, that's pretty easy. You don't have to exhaust if it's futile. Well, true enough. In this case, the manifest weight claim, the second claim is the claim that we discussed would probably eventually be barred by issue preclusion because the federal court in the first petition already ruled upon the issue. It's a non-cognizable claim anyway. Does it make a difference to you whether it's preclusion or stereodecisis? It doesn't because it's not cognizable anyway. He'd never get relief on it, so it doesn't matter to me if the court says it's stereodecisis or if it's issue preclusion or if it's a non-cognizable claim. The real debate from the perspective of the state is what to do about claims that could have been brought but were not. Really, that's the key thing and that's the way in which, oddly enough, EDPA, if read this way, expands options for habeas claimants which is a little unusual. That part I do get. That's absolutely true and I think that's why this reading of Magwood as courts have said as the 7th district or 7th circuit has said unduly expands rights for prisoners. But then you have to answer her point which is you could have made the exact same point as to Magwood. Well, I think Magwood is a much easier issue, a much easier case. I mean, that's definitely a new set. It was remanded for a new sentence. It applies to things, claims that were brought as to sentencing and could have been brought but weren't. That's the same dynamic. That's the same way in which EDPA would provide more options for relief for habeas claimants than pre-EDPA. It's as strange there as it is on the conviction side. In Magwood, the same mistake was made in the resentencing. So the court didn't have the occasion, as it said, in the door that it left open to discuss whether or not it could look at a claim that should have been brought the first time. Well, maybe I jumped the gun on this. I guess it's a question for both of you. I understood post-Magwood for things to be this way. If you had challenged, if you had a prior challenge to your sentence and you raised some claims and you didn't raise others, the claims you raised were addressed, you later lose that, you later get state court relief. I thought Magwood said in the second petition that the federal district court could address the claims you didn't raise but could have as well as the claims you did raise. I don't think Magwood says that. I think Magwood is restricted to issues that occurred on the resentencing. You can bring all of those issues that occurred at the resentencing in a second petition that is treated as first in time. And is there any sense that the old phrase death is different than Magwood was a death case and the resentencing wasn't just about five years here or there. It was about whether he should be put to death. I don't think so. Not at all. So you're saying the thing about Magwood is that all Magwood says is that you can address anything that happened in the resentencing even if it happened the first time around and they in effect waived it the first time around. Correct. Because they're still addressing in Magwood, they're still addressing a mistake that occurred at the second sentencing. It's not as if he added a claim that said oh and by the way there was jury by. Why didn't they just analyze it that way and say that this is a new claim. Why did they go through this whole thing about it's the judgment and it's an application and we're not talking about claims and I mean it seems like if that's all they meant to say it would be a lot simpler and less far reaching ways of saying it. Well I think the debate between the dissent and the majority was the question of the claim, the fair warning claim because the same claim applied to the first sentencing, it just had never been raised. So the so they resolved that by saying well it's all about the judgment it's not the claim itself, it's about the judgment. And so that's why because the same mistake was made in the second sentencing, the second judgment, it was properly raised in a first in time petition once it came back around again. It didn't reach the question of if there was some evidentiary problem or if there was some ineffective assistance of counsel claim that wasn't brought the first time. Could that have been brought the second time? Well no that's the door they left open for others to decide and that's why we're here today. The district court decided it differently than the majority of circuits but agreed with the seventh, agreed with some unpublished decisions in this circuit and we think it should be affirmed. Anything else judges? Anything else? Thank you. Let me ask this, does your theory effectively mean that anytime the state for example appeals a sentence, let's say that the judge gave an illegally low sentence, they're putting in play a second round of habeas. Sure, if it produces a new judgment I don't think anything in Magwood turns on whether it was the petitioner that requested the new judgment or the state that did it turns on whether there was a new judgment. So that just sort of adds another layer of oddity? If I could just kind of, just to clarify Judge Sutton I think what you were describing Magwood as holding is what Magwood held which is you can bring all of your claims relating to sentencing whether or not they involve something different that happened at resentencing. That was the exact question before the court because everyone agreed that the one thing that happened that was new at the resentencing ineffective assistance, of course he could bring that. The question the court was resolving was could he also bring this fair warning claim, a claim that he didn't know that he would be subject to the death penalty when he committed his crimes. Right, but it's but what counsel says is accurate the mistake was made in the second judgment in the judgment being challenged. Now it may have also been made in the first one but it was a mistake being made in that second judgment. I think that's true only in the sense that it's also true here which is he is being sentenced and his conviction and sentence are being reduced to a judgment pursuant to which he is in custody. So the errors that occurred that produced in his view an unconstitutional conviction the injury he suffered is then being reduced to a new judgment. Actually were considered and done in the second judgment. That is when they resentenced him they had before them a fair warning claim, didn't they? No, I'm not sure that they did at the resentencing. Perhaps they did but I mean they didn't it wasn't open to them in the sense that that wasn't the reason he had gotten a resentencing. He had gotten a resentencing because the habeas relief he'd obtained was that the court hadn't considered the mitigating factors correctly not a fair warning claim. So to the extent there was a fair warning claim that was entirely new to the whole proceeding. So I think there's the court does say in Magwood that what it really means is there was a new error. But I think they mean that in the sense that say if you have a continuing tort you have a new claim every time it happens to you. Not necessarily because there's a new, a different kind of injury, a different kind of legal violation but simply because you suffer a new injury every time it happens. And I think they're saying there was a new error and a new claim in Magwood because there was a new judgment. Why don't you be clear on what did happen in Magwood? Was the fair warning claim not raised the first time around? Yes. But it could have been. It could have been because he was subjected to the death penalty the first time. It could have been. Exactly. Not in the actually was class. Whereas here you do have some of these claims that are in the actually were class. That's right. And the court says in Magwood, you know, we understand that this means you also could bring claims that you actually brought but we think those will be easy to dispense with. That's in one of their footnotes, they say. Why, by the way, doesn't issue preclusion apply to a claim that was raised the first time resolved against them? Is that because it's not the same case? I mean, it may. And I guess I just kind of need to think about it in the facts of what's going on in a particular case. If it's a purely legal argument versus if it has to do with factual findings. Because, I mean, issue preclusion usually is really only about certain aspects of things. But it may be that issue preclusion is a tool that kind of gets at some of this. Which is, I think, again, why claim preclusion did apply. Claim preclusion does not apply. Claim preclusion unquestionably does not apply independent of EDPA. I thought you said that would apply. I think issue preclusion can apply. I think it depends a little bit on the circumstances of how and where that might apply. It's claim does apply. So you can't have the principle of you couldn't bring your claim unless you can find that principle in EDPA itself through the second or successive provision. Or in pre-EDPA abuse of the writ doctrine. Well, I mean, and I would really fight the premise that EDPA expands relief that was available before EDPA because that's the whole point. What the court said in Magwood is no. Before EDPA, if you were challenging a new judgment, you got to bring a new habeas application. So they're saying EDPA... to their cases, but there were a lot of lower court cases that were applying the abuse of the writ in just this setting. I think it's up for debate which way that goes before EDPA. And I think the court kind of looks at it as what were we doing and what we were doing was treating a new judgment as basically resetting the clock and we take Congress to have acted against that backdrop because Congress decided to speak of a second or successive application, not of a second or successive claim. And the only last thing I would say is I do think that you need a single judgment rule. You can't have it turn on state law. And this court already has a judgment rule from the Rashad case where the court said the judgment encompasses both the conviction and the sentence. So what do you do with the technical correction cases? Is it up to the state how they treat that, whether it's a new judgment or not? I think it has to be a question of federal law, not state law, whether there's a new judgment. But I don't think that, you know, to give the example of the First Tenth Circuit case, I think it was a correction of a typo. I mean, I don't think everything that produces an amended judgment produces a new judgment for purposes of federal law. I think there could be an exception for something that is literally correcting a typo. But here this is kind of the easy case because he had a de novo resentencing proceeding at which he received a much harsher sentence. So, you know, you can reserve for another case questions about whether you do, in fact, have a new judgment. You seem like the kind of advocate that would admit something that seems to help you doesn't actually help you. My question to the other side was what about a case where the heir infected sentencing conviction? That seems to be a hurtful question for them. Am I right that that would be odd about ruling for them? Yeah, I think, you know, I mean, it's probably a little bit of a counterfactual hypothetical because if you had an heir that you realized there was a judge biased, you'd probably raise that as to your sentence and your conviction. But aren't they? Yeah. I mean, it just seems like there's enough things. I mean, even Sixth Amendment jurisprudence with juries involved in convictions and sentences and findings it seems quite possible to have heirs that apply across conviction and sentence. It's strange to say if you stuck only with Magwood and didn't extend it, you would be stuck only with challenging the sentence. Yeah. I think that's right. I mean, it would be quite unusual and I think really part of the way to think about this is the real question here is the rare habeas applicant who not only receives relief but then realizes after he receives relief in a new judgment that he overlooked a viable habeas claim the first time around. Does Congress want to foreclose relief in that circumstance? Because it's not going to be hard to get rid of the petitions where someone's just kind of raising stuff that never would have worked the first time and doesn't work this time. Why is your guy in that situation any more meritorious or virtuous than the person who doesn't have a new judgment and suddenly the same day has the same revelation? I think the point is does Congress want a rule that forecloses the meritorious one just to get at the non-meritorious ones? And what the court said in May, we don't see anything. It's made an EDPA statute that does foreclose meritorious claims. Only in rare circumstances because there are exceptions that are going to deal, I mean, yes you could have them foreclosed through things like procedural bar but you're going to have some exceptions that take care of some of them. Well, thank you counsel. We appreciate you and your firm taking this by appointment. It's a service to our system of justice. Case will be submitted. The clerk may adjourn.